Walworth, Chancellor.
The plaintiffs in error were the owners of the Swiftsure line of tow-boats between New-York and Albany, and were common carriers between those two places. By the usual course of the trade and business, when goods are received on board of the tow-boats at New-York directed to places on the route of the canals north or west of Albany, the goods, upon their arrival at Albany, are forwarded from there by some of the regular lines of canal boats to their place of destination. Such was the testimony of Hubbel in this case; and I think it was competent to show the general commercial usage. A box of clothing marked “ J. Petrie, Little Falls, Herkimer county,” was sent by the porter of the defendants in error, to one of the boats of the Swiftsure line, and was delivered to the master of the boat, without any special directions as to what was to be done with it. The master of the boat gave a receipt therefor in the following words: “ Received from St. John & Tousey, on board of tow-boat Ontario, one box merchandize marked J. Petrie, Little Falls, Herkimer Co.” The box, as the jury must have found under the charge of the court, was transported safely by the Swiftsure line to Albany. It was then put on board one of the canal boats of the New-York and Utica line, which was a regular and safe line of canal boats running between Albany and Utica and passing by Little Falls, to be transported to the latter place. It appears also that there was no community of interest in the profits of transportation between the line of tow-boats and the lines of canal boats; but that the freight of the goods, from New-York to Albany, is collected of the line of canal boats to which the goods are delivered *160 to be transported to their place of destination. And that, hy the custom, when goods are sent by the tow-boats directed to some place beyond Albany on the canal route, to he sent by some particular canal line, they are to be delivered to that line. If not directed to be sent by a particular line, they are to he forwarded by the first regular and safe canal line.
The box was plundered of its contents, according to the finding of the jury, after it was delivered in good order on board of a boat of the New-York and Utica canal line. And the only question is, whether the judge of the court of common pleas was right in receiving the evidence of the commercial usage as to goods sent by tow-boats, where there was no connection between those boats and the canal lines, nor any community of interest between them in the profits of their business; and in telling the jury that the proprietors of the Swiftsure line had discharged their duty, if they had carried the box of goods safely to Albany, and had forwarded it by a safe canal line from there.
I have .no doubt he was right in both particulars. When a box of goods is delivered to a common carrier, marked in a particular manner, without any directions except such as may be inferred from the marks themselves, the carrier has a right to presume that the consignor of the goods intends the carrier shall transport and dispose of them in the usual and customary way. And if the owner of the goods neglects to make the necessary inquiries as to the usage or custom of the business, or to give direction as to the disposal of the goods, it is his own fault; and the loss, if any, after the carrier has performed his duty according to the ordinary course of his trade and business, should fall upon such owner, and not upon the common carrier.
The evidence shows that the plaintiffs in error were not common carriers between New-York and Little Falls, but only common carriers of goods from New-York to Albany; and were mere forwarders of such goods by the canal lines when they were directed to places beyond Albany, on the canal route. And St. John & Tousey had no more right to expect that these carriers between New-York and Albany would themselves car *161 ry the box of clothing in question to Little Falls, than they had to suppose they would deliver the other box, forwarded by their towboat at the same time, to Hubbard at Chicago. As to both, they must have understood and expected that the owners of the tow-boat line would transport the boxes to the place where their business as common carriers terminated, and send them on in the usual way as forwarders, from that place.
There certainly is nothing in the language of the receipt to make the proprietors specially liable, further than they would have been if no such receipt had been given, and the delivery of the box on board of the tow-boat, marked in that manner, had been proved by the porter by whom it was delivered. It is a simple acknowledgment, by the master of the boat, that he had received from St. John & Tousey a box of goods with a particular mark thereon; which, so far as the giving of the receipt was concerned, was a mere mark of identity. In the case of Weed v. The Saratoga and Schenectady Rail-Road Company, (19 Wend. 534,) the two lines were connected together by an arrangement between themselves; and the agent of the defendant took the pay in advance for the conveyance of the plaintiff and his baggage the whole distance. Or if no actual connection between the two lines was proved, it at least appeared that the defendant permitted its agent to hold it out as a carrier of passengers and their baggage for the whole distance, by taking pay therefor. But nothing of that kind appears in the present case. The case of Garside v. The Proprietors of the Trent and Mersey Navigation, (4 Term. Rep. 581,) is in point to show that the plaintiffs in error were not answerable for this box of clothing, without any fault on their part, after it was delivered by then agent to the canal line at Albany.
I think, therefore, the decision of the supreme court was wrong; that its judgment should be reversed, and that of the common pleas affirmed.
Bockee, Senator.
I cannot agree with the supreme court that the receipt given by Parsons, the agent of the plaintiffs in *162 error, arid captain of the tow-boat, was evidence of a contract to deliver the box of goods ■ at Little Falls, Herkinier county. The receipt shows nothing more than the naked fact that a box of merchandize, marked “ J. Petrie, Little Falls, Herkimer Co.” was received on board the tow-boat Ontario, from St. John &> Toxisey. The tow-boat Ontario carried goods between New-York and Albany, and it is not pretended that the owners were connected with any line of transportation beyond either of those places. The custom bf trade and the nature of the business carried on by the plaintiffs in error tended to explain the purpose oí the bailment, and, according to the evidence exhibited in this cause, would, I think, make them liable as common carriers from Ñew-York to Albany, and as forwarders beyond that place. The defendants in error cannot be presumed to have been ignorant oí the nature of the plaintiffs’ business, and that the Ontario carried freight only between New-Yoik and Albany. It is not necessary, as suggested by the supreme court, that the receipt should have limited the carriage to Albany, because the receipt in itself creates no liability except such as arises from the mere delivery of the box on board of the vessel. The implied contract which the law makes for the parties must be reasonable, and such as is consistent with the plaintiffs’ occupation and the usage of trade. If the receipt had been given by a person whose business was to receive goods for storage, the implied contract would be to keep them with ordinary diligence ; and the name of a place marked on a box could not subject him to the liabilities of a common carrier. In the case before us, the re.ceipt raises no special contract. It neither specifies nor imposes any obligation on the party giving it, other or different from that which he is under by reason of the nature and ordinary course of his business. No pretence is made here that any special contract was entered into; and the only reasonable contract which the law can imply, under the circumstances of this case, is that the plaintiffs in error shoxxld carry the box to Albany and forward it thence to the place of destination. The rule established by the supreme court, that the name of a place marked on a box of merchandize implies a contract to de *163 liver at such place, without any reference to the nature and extent of the business and employment of the carrier, is fraught with consequences most alarming to all who are engaged in freighting and transportation. Suppose the box had been marked “ Brown’s Hole, Rocky Mountains.” The supreme court say there is an implied contract to deliver the goods at that place. And as it is the duty of every man faithfully to fulfil his contracts, the plaintiff in error must abandon his ordinary avocations and business, leave the delights of domestic association, embark with his dear bought freight, and follow the long lines of internal navigation till he reaches the head waters of the Yellow Stone. Then he must traverse a vast desart with Indian horses and pack saddles, exposed to famine, to the wintry storms, to wild beasts and savages; and if Providence should protect him through every danger, he returns, after years of suffering, a worn out beggar to a ruined home. This may be considered an extreme case; yet I conceive it is no more than carrying out the principle to its legitimate and certain results. At the same time that this receipt was given, another receipt was given for a box of merchandize marked “ G. S. Hubbard, Chicago, Illinois.” The same principle which makes the defendants below liable as common carriers to Little Falls, would extend their liability to Chicago, and even to Oregon and China. If they receive a chest of tea marked “ Houqua, Canton,” they must carry it there. The doctrine is too ruinous and monstrous in its consequences to remain for one hour the law of the land. A person engaged in the business of freighting from New-York to Albany is accustomed to carry goods for every dealer and retailer and many'of the consumers throughout the wide extent of the country, and he probably receives at each trip more than one hundred different parcels of merchandize, with as many different names of places marked thereon. To hold him responsible for the acts of others with whom he has no connection and over whom he has no control, and make him liable as common carrier for the safety of each of these parcels till it reaches its ultimate destination, would be the short way to ruin him His business could not be carried on under the operation of such *164 a rule. If a contract is to be implied merely from a mark upon the box and without reference to the nature of the employment or business of the party, then every carman who receives a marked bale of merchandize is in great danger. If the fatal name of “ Peckagama” or “ Chegoimegon” appear upon the hále, the carman in the city as well as the freighter on the Hudson will be held liable as common carrier till the goods shall reach their remote destination. Such cannot be the law. The practical inconvenience and injustice of such a rule would be too great to be endured. We are seeking that general rule.which the equity and policy of the law requires, which shall be reasonable and just in its application, and which shall obviate the necessity of the parties resorting in every instance to special contracts to define or limit their responsibility. Few persons except lawyers think of making special contracts. It is a strong and in my mind a conclusive objection against the decision of the supreme court, that, to avoid a very great practical inconvenience, the party must provide, by express stipulation, that his liability as common carrier shall extend no farther than in the ordinary course of his business he is employed and paid as such. The nature and course of his business is presumed to be known to those who employ him, and beyond those limits his liability ought not to be extended. It does not appear that the rule rendering common carriers liable for every loss except that which is caused by the act of God, or the king’s enemies, was any part of the ancient common law of England. It is a comparatively modern innovation, introduced in consequence of the growing commercial relations of the country, an imperfect police, and the frequent losses by robbery. The first case in which the principle was recognized and settled is that of Wood-yer and Curtis in the thirty-eighth year of the reign of Elizabeth.(a) And the reason of -the rule is not, as stated by Sir Edward Coke, solely or principally because the carrier hath *165 his hire; for other bailees for hire, and private carriers for hire, are not liable in the same manner and to the same extent. The locatio operis mcrcium vehendarum is of two kinds. Where goods are delivered to a private person to carry for hire, he is responsible only for ordinary neglect. The case of common carriers is for special reasons an exception to a general rule. Chief Justice Holt, in the case of Coggs v. Bernard, (2 Ld. Raym. 909,) and Sir W. Jones, in his Essay On Bailments, have concurred in the opinion that common carriers are held liable in respect to their public employment, and for reasons of policy, to prevent collusion with thieves and robbers. Now it is certain that the plaintiffs in error were not in the public character and employment of common carriers beyond the port of Albany; and when the box in question was safely delivered by them at that place, to a suitable forwarding line, they were no longer responsible.
The judge of the court of common pleas of the city of New-York charged the jury correctly, that the defendants below were to be held liable as common carriers to Albany, and as forwarders beyond that place. The judgment of the supreme court is therefore erroneous and should be reversed.
Putnam, Senator.
It is claimed that the receipt given in this case by the plaintiffs in error, imports an agreement to carry the box to the consignee at Little Falls, Herkimer Co. I think otherwise. It is a mere acknowledgment of having received the box from St. John & Tousey on board the boat Ontario; and the clause in it designating the marks upon the box, instead of implying an agreement to carry to any particular place, is merely descriptive of the box. The case therefore mainly rests upon the legal presumptions arising from the delivery of the tiox to the plaintiffs in error, taken in connection with the facts proved in relation to the nature of their business and the usage applicable to it.
They were engaged in the business of carrying goods between New-York and Albany, their route extendingno further; and they had no connection with any transportation line west *166 of Albany. Nor was it shown that they ever held -themselves out to the world as carriers beyond the latter place. It is a fact, moreover, pretty generally understood, I believe, that the river, canal and lake lines of transportation, are, in most instances, if not always, distinct and separate; and at the points of division, transhipments of the cargo are necessarily made.
Now the doctrine as claimed by the defendants in error, and laid down by the supreme court, would compel the proprietors of these lines to unite the several sections and form a community of interest; a result which would be found, I apprehend, equally inconvenient and detrimental to both shipper and carrier.
Where goods bound for a place west of Albany, and so marked, are placed on board a vessel in New-York belonging to one of the tow-boat lines, the presumption is that the consignor knows the limits of the route occupied by the line, and quite as forcible is the presumption, I think, that he knows the usages of the line. His interest for a safe shipment of his property would induce him to enquire as to these particulars, unless he was already acquainted with the facts ; and where no enquiry is made by him, knowledge on his part should be presumed.
Irrespective of any special agreement, or of any express proof of knowledge by the shipper of the custom of the carrier, or the limit of his line, my impression is, that when goods going west of Albany are committed to a carrier whose route terminates at that place, he discharges his duty under his implied obligation when he makes a delivery according to the uniform course of business pursued in similar cases. Such should be the u law. The usage or custom enters into and forms a part of the contract created by the deposit of the goods with the carrier. In the case of Hyde v. The Trent and Mersey Navigation, (5 Term Rep. 389,) the question was, whether delivery of the goods at a warehouse in Manchester was a delivery to the plaintiff; and Mr. Justice Grose said: “ Whether it be or be not a delivery, may depend on the .general custom of the trade, or the particular usage which has prevailed between the parties themselves.” In Garside v. The Trent and Mersey Navigation, (4 Term Rep. 581,) *167 evidence of the usage and course of business was received to determine whether the defendants, at the time the goods were burned, held them as common carriers or mere wharfingers for the plaintiffs. Mr. Justice Cowen, in the case of Gibson v. Culver, (17 Wend. 305,) said:,“Nor do I understand the force of usage in such a case to be denied, but on the contrary it is expressly admitted in Ostrander v. Brown, (15 Johns. Rep. 39.)” Evidence of usage and practice was received in the case of Sewail v. Allen, (6 Wend. 335,) to prove that the defendants were common carriers of bank bills. It was resorted to also in Barnes v. Faley, (5 Burr. 2714,) and Mr. Justice Aston there observed, that “ the limits of the delivery are to be determined by the usage of the place.” And in Rushford v. Hadfield and others, (7 East, 224,) the court agreed in the propriety of such evidence to enlarge the rights of carriers. I have not been able to discover, therefore, that any error was committed by the common pleas in receiving the evidence of usage given in this case.
From the evidence given at the trial, the jury had a right to assume that the box in question vzas delivered to be transported according to the business of the line; and, if necessary, that the usage of the company was well known to St. John & Tousey. In other words, it was the .province of the jury to determine the effect and extent of the implied contract between the parties.
I am of opinion that the delivery of the box in question to a safe forwarding line at Albany, was a full execution of the contract made by the plaintiffs in error; that the cause was properly disposed of in the common pleas; and that the judgment of the supreme court should be reversed.
Rhoades, Senator.
I cannot doubt that the testimony given at the trial in respect to the custom or usage of the tow-boat lines on the Hudson for the last twenty years, was properly received. It appears reasonable that a usage or custom of so long standing, and, it is believed, so notorious to every person in the habit of having property shipped at New-York to any place beyond Albany, should limit the liability of the Sxviftsure line to the safe transportation of the goods in question from New-York *168 to Albany, and the due delivery of the same to a reputable and responsible carrier on the canal, going to the place of destination.
But it is alleged that the receipt which was given by the plaintiffs in error raised an implied agreement that the Swift-sure line would deliver the box in good order at the place of destination, according to the direction marked on it. The receipt is as follows: “New-York, Oct. 22, 1836. Received from St. John <fc Tousey, on board the tow-boat Ontario, one box merchandize marked J. Petrie, Little Falls, Herkimer Co.” It is such an instrument as might properly have been given, had the boat Ontario been a mere store-house or float in one of the slips at New-York, for the deposit and safekeeping of goods previous to their shipment, and having no connection with the business of transportation. The marks and direction on the box would have been the same, had St. John <fc Tousey lmown that the owner himself was to take it from their hands, and carry it to his own place of residence. A receipt was taken by them as the best means of proving the delivery of the box on board the tow-boat Ontario; and the marks on the box were copied into the receipt by the agent of the plaintiffs in error as the most common and convenient way of giving an intelligible description of the property in their hands. The receipt is not a contract to carry the goods at all; but the Swiftsure line being a well known transportation company on the Hudson river between New-York and Albany, and having taken the box on board one of their boats for the purpose of transporting it, there was an implied contract that they were to carry the goods in the direction of Little Falls as far as their line extended, and then, as the agent of the owner, deliver the box to a responsible carrier, going to or towards that place.
The liability of common carriers is already very far extended. To extend it still farther, and especially the length which the supreme court have gone in this case, would be, in my opinion, against public policy, and tend to increase rather than diminish the hazard and inconvenience of those who from necessity are obliged to part with the possession of their property for the pur *169 pose of having it transported to a distance, beyond their immediate oversight and control.
Goods from the city of New-York are sent to every part of the United States, and in many cases must pass thousands of miles through the hands of a great number of common carriers, differing in their modes of transportation, and through a variety of channels, exposed in unequal degrees to risk and hazard; the carriers having no other connection than such as consists in forming a continuous line of communication between distant points, and having little or no opportunity of becoming acquainted with the character and responsibility of each other. If therefore those engaged in the business at the great and important pointy of shipment, are to be held accountable for the safe delivery of property received by them until it reaches its most extreme point of destination, and that accountability is to be inferred from the mere mark on the package or box, copied into a receipt, but few responsible and trust-worthy men will hereafter consent to incur such indefinite and far-extended liabilities, especially at the present prices of freight. The business will pass into the hands of mere adventurers—men who have but little to hazard in property or reputation—or the prices of freight must be increased in a ratio corresponding with the risk.
Every one acquainted with the mode in which goods are shipped in New-York for the country, and especially with the hurried and pressing manner in which the business of the spring and fall is transacted, must be aware of the difficulties of defining by special contract the precise liability which the carrier is to incur for each box or package of merchandize which may find its way on board his vessel.
But upon the principles laid down by the supreme court, there can be no necessity of producing a receipt, in order to fix the liability of the common carrier. Goods may be delivered on board a tow-boat lying at New-York, directed to one of the most remote settlements in the far west; and if the box or package be received without any qualification or explanation between the parties, the mere fact of its delivery, together with the direc *170 tion marked upon it, implies that the carrier has contracted to transport it safely to its ultimate point of destination. And thus the carrier on the Hudson river, who may honestly suppose he has discharged his duty and obligation by transporting the goods to Albany, the extent of his route, and there delivering them to a safe and responsible line of boats on the canal, finds too late that his responsiblity extended through a dozen reshipments, and carriages by land and water for thousands of miles ; and is finally made to pay for the loss of the goods, occasioned by the dishonesty or carelessness of some one at a point beyond the Rocky mountains.
There are many men in this state who are engaged as common carriers in the transportation of the produce of the country by land. One of these men receives a load of flour on board his wagon for the purpose of delivering it at some point on the Erie canal, the barrels being marked and directed to a town in the interior of the state of Maine. The carrier neglects to make a special contract that his liability is to cease at the point of delivery on the canal; but he delivers the flour in good order on the canal, and the property is forwarded from one line of transportation to another, until it passes into the hands of the last carrier on the route, by whose want of care it is lost. It would, under such circumstances, be a most severe and harsh rule of law which should make the person who first undertook the transportation of the article, liable for its loss; and yet such would appear to be the rule, upon the principles laid down by the supreme court in the case before us.
I am unable to discover any satisfactoiy reasons, founded either in natural justice, or in sound commercial policy, for extending the liability of common carriers so far as the supreme court have carried it by their decision in this case; and I must therefore vote for a reversal of their judgment.
Scott and Root, senators, also delivered opinions in favor of reversing the judgment of the supreme court.
*171 Porter, Senator.
On the trial of this cause the judge charged the jury that, if the plaintiffs in error had contracted to deliver the goods in question at Little Falls, they would undoubtedly have been bound to deliver them at that place; but that if they had contracted to deliver them at Albany, their liability as common carriers ended there, and then they became forwarders; that there was no proof of any contract by them to carry the goods to Little Falls; that the receipt and the directions on the box did not prove or imply such an undertaking; that the known usage of trade formed a part of and entered into the contract between the parties'; and that, by the delivery at Albany to a safe conveyance, the plaintiffs in error had discharged their duty. The usage proved on the trial was a usage at Albany, and such as existed between the carriers on the river and the carriers on the canal. It was a practice adopted by this class of persons; for their own convenience or profit, and there was no proof that it was generally understood or known at any other place; much less that the plaintiffs below had any knowledge of it, or that it was so generally known as to raise a fair presumption that they were acquainted with it.
The action is founded upon a contract between the parties, and the only real difficulty is in ascertaining clearly what that contract was. The judge who presided at the trial assmned that the contract was to carrry the goods to Albany, and no farther; and he expressly told the jury that there was no proof of any other contract. He instructed them that the receipt given for the box, and the directions upon it, did not prove any contract ; and he even went so far as to say that they formed no item of evidence towards the proof of a contract, and took from the jury the consideration of the question. In this I think he erred. The receipt and the marks upon the box certainly formed an important item of evidence in showing what the parties Understood to be the agreement at the time the box was delivered-. When the defendants in error took the box on board to the captain, and asked him if he would carry it, they had reference to the directions on the box. The request, considered in connection with the marks upon the box, amounted *172 to this: “ Will you take this box and carry it to Little Falls And by receiving it on board and giving the receipt, the captain responded in the affirmative, and thereby the contract became complete. If there were any reservations in the mind of the captain, or any conditions to be annexed to the contract, it became him then to make them known, or otherwise the plaintiffs would have been deceived. If the fact was, as is now pretended, that the plaintiffs in error had no connection with the transportation of goods beyond Albany, and made no bargains to carry any further, would not the plaintiffs have had a just claim to be informed of that fact? The testimony on this point I think should have been left to tíre jury, in connection with the question of usage, which I will now consider.
If the defendants in error, when they took the receipt, knew that, by general and common usage, the responsibility of the plaintiffs in error, for articles sent by them, extended only to the safe delivery of the articles on board a responsible canal boat at Albany, this would undoubtedly have qualified the receipt; and if the testimony established that point in the opinion of the jury, they should have found for the plaintiffs in error. I admit also that proof of something short of actual knowledge on the part of the defendants in error, would have warranted such a verdict. The principle laid down in Gibson v. Culver, (17 Wend. 305,) furnishes, I think, the true rule which should govern this and similar cases. That was the case of a stage coachman, who had a parcel delivered to him to carry to Troy, directed to a mercantile house in that city. It was left at the coach office, and no notice was given to the persons to whom it was directed. The parcel being lost, the consignor sued the stage proprietors, and claimed that they were liable because they had not given notice to the consignees. The court decided that it was competent for the defendants to prove, that the uniform usage and course of business was to leave goods at the usual stopping places of the coach, without giving notice to the consignees ; and that if such usage had been so long and so well understood as to warrant the jury in saying that the consignor knew it, the carrier would be discharged. This rule is founded *173 in good sense. If the consignor understood the usage and course of business, he would have said to himself: “ All the carrier has to do is to leave the parcel at the coach office, and he has then performed his contract. I must therefore give notice to the consignee.” But if the consignor did not understand the usage, the law would warrant him in presuming that the parcel would be delivered by the carrier to the consignee. This must be so, or the usage would operate as a fraud upon the consignor; for the common law obligation, which, in the absence of any different one expressly entered into, or implied from known usage, requires the carrier to make delivery to the consignee, would thus be modified and varied without the knowledge of the other party. This certainly can never be tolerated. The jury must in these and the like cases find, that the usage has such continuance, publicity and general acceptation, as would charge the consignor with notice of it.
In the case before us, the defendants in error had a right to infer from the conduct of the captain and from the receipt, that the box would be carried to Little Falls: and the proof given of a usage at Albany, among .carriers, was insufficient to authorize the court in determining that such was not the contract. If the plaintiffs in error wished to vary or modify then common law liability, they should have proved a usage so publicly and generally known at New-York, where the plaintiffs resided, as to warrant the jury in saying that it was probably known to the defendants in error, and that they contracted in this case in reference to it. Proof of such a usage would have limited the import of the receipt. The defendants in error had a right to require this proof, and then that it should be submitted to the jury.
In my opinion the judgment of the supreme court should be affirmed.
On the question being put, “ Shall this judgment be reversed?” the members of the court voted as follows:
For reversal: The President, the Chancellor, and Senators Bartlit, Bockee, Denniston, Deyo, Foster, Frank *174 lin, Hopkins, Lott, Mitchell, Platt, Putnam, Rhoades, Root, Scott, Sherwood and Varney—18.
For affirmance: Senators Ely, Hard, Lawrence, Porter and Scoyil—5.
Judgment reversed.(a)

 The case referred to is probably that of Woodliefe and Cutties, (See 1 Rollers Abr, 2; Moore, 462, S. C.)

 See Muschamp v. The Lancaster and Preston Junction Railway Company, (8 Mees. & Welsby, 421.)